United States v. Brown May it please the court, may I be the first one... We generally wait until both counsel can sit down. Ms. Elias. May it please the court, may I be the first one to wish you all a good afternoon. I am here representing the defendant and the appellant in this case, Anthony Brown. And our only issue on appeal is whether or not the court committed error when it enhanced his sentence by two levels for the obstruction of justice. Obstruction of justice is a very serious finding by a sentencing court. And it requires, under the law, four distinct findings. The first finding is willfulness. And the Supreme Court in Dunegan emphasized that we are not trying to give every defendant a finding of obstruction just because they testify to facts that are different than the other side. So there is a requirement of willfulness in the obstruction. Willfulness is different from general intent. Willfulness means that you are trying to obstruct the court with your responses. In addition, it must be a material falsehood with a nexus to the offense of conviction. Now the facts in this case are entirely different from the cases cited by the government and the cases that this court has ruled on in the past. And they differ in four distinct ways that keep this court prevented from affirming the lower court's decision. First of all, we have a decision and a finding of obstruction by a judge who did not hear the testimony himself. And a great deal of deference is given to the fact finder who personally observes testimony and makes a call on which parties are credible. The second important factor is... I must say I don't even understand that argument. One frequent source of an obstruction enhancement is lying to the police or lying to the pretrial services officer. Are you saying that obstruction enhancements can't be used in those cases? That only when the person lies to the judge's face is an obstruction enhancement permissible? No, I'm not just saying that it can never be used, Your Honor. I'm saying in the circumstances of this case, when it accumulates with the other factors of what occurred. And what occurred was that hearing where the defendant was compelled to testify was never even adjudicated. That court never made findings of that. Again, I must say I don't understand this. Suppose somebody lies to the pretrial services officer about something. The pretrial services officer who's writing the pre-sentence report doesn't adjudicate anything. But a lie about some material fact, nonetheless, is obstruction of justice. The fact that nothing else was adjudicated isn't important. So why is it important here? It's important, Your Honor, because in this case, as would be the case with pretrial, this defendant tried to assert his Fifth Amendment and prevent him from obstruction. No, you assert the Fifth Amendment by asserting the Fifth Amendment. And then, if you were ordered to testify, by testifying truthfully. But the Supreme Court has said probably more times than I can count, the fact that you're compelled to testify doesn't authorize lying. And that's correct, Your Honor. And that's your third point, that he was under an order to testify having been given use immunity. Right? No, he didn't have any immunity, Your Honor. No justification. Oh, I'm sorry. The judge found that it wouldn't tend to incriminate him. Right? So the judge says you have to speak. And he lies. Well. The issue, Your Honor, is he didn't make that fact finding. I would have thought your stronger arguments are based on the ambiguity of the questions and answers. I'd like to proceed. Combined with the textual requirement in 3C1.1 that the obstruction be, quote, with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. I'd like to proceed to those two points, Your Honor. Thank you. This case is also different from other cases. Because of his invocation of his fifth, he didn't completely testify. He was forced to answer four compound questions regarding the events of that evening. And those were structured in a narrow format in order to prevent him from being exposed. Those limited yes or no answers in that situation could not possibly form the kind of willful intent and a clear finding of falsehoods as would be required to enhance somebody's sentence. The other factor that the court did mention is that there is an excess requirement. We're supposed to have this testimony take place in the case of conviction. And with that, if that would have happened in this case, which is the normal scenario where it usually does happen, then the judge would have been the one who observed him. And there is some nexus in relevance to what his sentence for this conduct should be. Well, counsel, let me just suggest that talking about what's usual and talking about a nexus is dangerous here. Because what we've got is a text of a guideline that eliminated the word during, that an earlier version of that guideline included, and substituted with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. And I guess I'd like to understand from you what you think that requirement means with respect to the investigation, prosecution, or sentencing of the instant offense of conviction. I would like to say, Your Honor, that that means the exact plain language of the text, that it has to be with respect to his case. In this situation, he did not testify, if you want to call it testimony, in his own case. It's testimony. Okay. He did not testify in his own case. So that requirement is just from a literal interpretation. Although the guideline doesn't say in his case. It says with respect to. Well, it requires obstruction in the offense of conviction. So that requirement means it's got to be obstructing the conviction in your case, basically. So that is a requirement that's written in there, and it makes sense to require that because you're being sentenced for the conduct in your case. And this testimony was compelled after he had pled guilty, correct? No, Your Honor. Before the sentencing? He had not even pled guilty at that point. He had not. Okay. Had there been agreement and negotiation at that point? Sure. The case had been pending for a long time, and he was working on negotiations. And to be clear, that was mentioned to the judge, who had to hear this testimony. They're not just concerned with the fact that he's got his Fifth Amendment right, but the Fifth Amendment right would apply as well to sentencing factors. Did the district judge here who sentenced Mr. Brown, did he give any indication that this guideline issue was not decisive for his sentence, that it might be harmless? No, Your Honor, he did not. He just followed the guidelines? No. Did he ever explain why he gave a substantially below-guideline sentence to somebody who also received an obstruction enhancement? Yes, Your Honor, actually he did. And it was for the reasons we requested. In this case, there was a significant amount of post-conduct rehabilitation, which in and of itself seems inconsistent with the court's finding. There was evidence that from that day where Mr. Brown participated in the arrest of the other individual by leading them to him, ever since that day he had not been involved in any criminal conduct. Ever since his arrest, except when he was committing perjury, he hadn't committed any other crimes? Well, it wasn't even his arrest, Your Honor. I see my time is up. It's not up. Okay. It wasn't his arrest at that moment in time. He was just participating and cooperating. And in his cooperation, he led to the arrest of another individual. All right. Thank you, counsel. Ms. Pallay. May it please the Court, Shelby Pallay for the United States. Good afternoon. Good afternoon. The district court correctly applied a two-level enhancement for obstruction of justice by making explicit findings of fact that the defendant committed perjury during the Sessom suppression hearing, which findings were supported by the record. Turning directly to the court's questions concerning the elements for the enhancement under the guidelines, I'd like to suggest that the element with respect to really goes to the temporal element of that enhancement. In other words, that the obstruction occurred during the course of. The guideline used to say during, and the commission removed that language in about 2008. Correct, Your Honor. So why is it still temporal? With respect to, even in the 2008 timeframe, when the commission stated the reason for the amendment, it references the fact that it is with a timing of that case. So with respect to the timing of the defendant's proceedings, which is different than. I'm sorry. About whether you're talking about. What that amendment was about was reaching pre-investigation obstruction, correct? Correct, Your Honor. But it still had to be with respect to the offense of conviction, and I don't see how that's satisfied here. I think with respect to still applies to the temporal timeframe, frankly, Your Honor. I think the second part, the closely related offense, tells the court that if there's an obstruction in a closely related offense, so therefore not with respect to his own offense, tells you that there is two separate analysis. The first analysis, when did that happen? And the second analysis, what is it in connection with? And that is why the facts of this case are that the obstruction happened with a closely related offense. If the guidelines still said during, that would be a strong argument. And I understand, Your Honor, but I still think that it wouldn't be necessary to have a second portion of the enhancement reference a closely related offense if obstruction could only apply in connection with the defendant's own offense. Those would not be consistent. So in this case, when he's testifying in the Sessom suppression hearing, which is in connection with facts directly related to the larger Henderson DTO, it is a closely related offense. And, of course, then he testified during the course of the prosecution, i.e. post-indictment. There's no disagreement about whether you satisfy the second part of the requirement. But the question really has to do with the first part, with respect to the offense of conviction. You all did not respond in your brief to the defendant's point about compound questions. And if somebody says yes in response to a compound question, they're buying into every element of it. If they're saying no, you don't know, do you? I think that's right, Your Honor, except for in this case, these facts are particularly straightforward. The defense looks to break up a question as narrowly as a date, a time, and where they were. And in this case, it is really not a complicated set of facts. Would you agree, though, that if Mr. Brown, here's the first question. Mr. Brown, on the evening of July 11, 2012, at approximately 745, were you in a car with a Chicago police officer around Taylor and North Avenue in Chicago? He answers, you said Taylor and North Avenue? Question, yes. Answer, no. Now, if he believed that he was at a different intersection, that's an honest answer, right? Certainly. Okay. Or if he thinks it was a different time or a different date? Certainly, Your Honor. Right. But again, the defendant had access to the specifics of these questions for weeks prior to the hearing because they were articulated in the SESM brief requesting a reopening of the hearing. So there can be no question that he was confused about what the question was asking. So more critically, the facts elicited by the police officers and found credible by Judge Castillo were that they were in that area at that time, on that date, with the defendant. What if the defendant thought it was 830? The reality of it is, at the time, the facts that were established in that original hearing, I understand your, Your Honor. Hang on a second. This goes to another problem I've got in this case, which is that Judge Castillo gave those signals before he had heard all the evidence, correct? Yes, Your Honor. Okay. So in what sense should we treat those as findings by Judge Castillo? First, Judge Castillo actually did specifically say he's making a finding that these officers are credible. What were his exact words? That he specifically madeóI'm not sure if I have exact words in front of me, Your Honor. That he found Officer McFadden's testimony credible, as well as the fact that theseóthat the officeróthat defendant Brown was in the car with the officer in front of the house. How can a judge make that finding before the end of the hearing? And he actually saidófirst of all, that was the end of the hearing originally. No, no, no. We didn't have the reopening question. And I understand Your Honor's point, but I think it would be fundamentally inconsistent for Judge Castillo to have found the defendant's testimony to be credible when comparing it to the testimony of the officers. In fact, that's the ultimate point here. Of course, there was an intervening guilty plea. There are some different points. The problem has to do with both falsity and willfulness, right? Certainly, Your Honor. And judges hear conflicting evidence and decide which is credible all the time without reaching a conclusion that somebody was lying. Certainly, Judge Castillo never made any finding that Mr. Brown was lying willfully, did he? Correct. But Judge Guzman did. The district court did. And that is, I think, what's critical here. That's what's under review in this court, is that Judge Guzman specificallyó in this caseóspecifically said that Judge Castillo's interpretation was the most reasonable interpretation of what happened that day. And based on the district court's own experiences, that's because that's how these things proceed. That the defendant's position, the defendant's testimony, was the least probable interpretation and, in fact, was not consistent with how those types of cooperation proceed. The district judge, Judge Guzman, referred to, quote, his version of events. You mean the defendant's? Which is based on his no answers to those three questions, correct? Correct, Your Honor. And we don't knowóthere was no exploration, was there? There was not. Of the possibility of an honest mistake, of what detail might have called for a no answer. Federal prosecutors are trained not to ask questions like this, aren't they? Certainly, Your Honor. I just put a negative into my own question, right? But it's precisely because you can't drawóyou can't prosecute perjury effectively when the questions are this bad. The questions were narrowly prescribed in light of the concern of the feds. I know. I know. But the question has to do here with the consequences. Well, I understand, Your Honor. I think, again, it comes back to the ultimate point, which is, in fact, in the sentencing hearing, one of the defendant's arguments was, what if he was in his own car? He was in his own car when this happened, which Judge Guzman, the district court in this case, found absurd on the facts because, of course, he was under arrest. He was in custody. He wouldn't be in his own car. And I think what matters is the defendant knew exactly what the questions were going to be well in advance of the hearing, even if he didn't know that he was going to be compelled to testify. And splitting the hairs of whether or not it was 745 or 8 o'clock wasn't really the point. The question was, what was the nature of his cooperation in that context? We don't know what the point was when the questions are asked that way. I think, again, it comes back to what the officers testified to. That's what the officers testified to. And in this case, the defendant testified the exact opposite. No, he didn't testify the exact opposite. He said no in response to three compound questions that leave ambiguous what part he might have disagreed with or the whole thing, let alone whether the disagreement was honest or deliberately, willfully deceptive. Again, it's not ambiguous in the context of this case because it's a simple set of facts. I mean, it's really not, were you in a car, in the police officer's car, in front of Sessom's apartment building? Did you make this phone call and did you identify him? That's essentially what the facts were. Again, if we go back to a question that asks about time, that asks about location, that asks about with whom were you present, and that asks about geographic placement on a corner, you ask those four things in a single question, and the defendant actually responds in a way that makes it seem as if he's wondering about one of those four questions when he says, did you say Taylor and whatever, and then the single answer is no. Any one of those four facts he could be saying was not correct. He's not saying I wasn't there and I didn't cooperate, blah, blah, blah. He's saying maybe one of those four things, he may be saying, one of those four things was not accurate. Again, Your Honor, I don't know that it can be split that finely, but I understand Your Honor's point, and nevertheless, the government does respect the request that the defendant's sentence be affirmed. Thank you very much. Ms. Eliade, we appreciate your willingness. Your time has expired. We appreciate your willingness to accept the appointment in this case and your assistance to the court and client. The case is taken under advisement and the court will be in recess.